(82 South. 104)

STATE v. HUGHES et al.   (7 Div. 10.)

(Supreme Court of Alabama.   May 22, 1919.)

INTOXICATING LIQUORS ⬤═247 — ILLEGAL TRANSPORTATION — PROPERTY USED — CONDEMNATION—"AIDED AND ASSISTED."

Section 13, when read alone or in connection with the whole act (Act Jan. 25, 1919), does not contemplate the condemnation and selling of property of those who did not aid or assist in the unlawful transportation of liquors or who were not chargeable with notice or knowledge that their property was to be used for such purpose; the words "aided and assisted" implying either knowledge on the part of the person assisting or such negligence as to charge him with knowledge that his property is to be used in violation of law.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Proceedings by the State against Arthur J. Hughes and others to condemn a mule, a buggy, and a harness which were being used in the transportation of intoxicating liquors in violation of the Bone Dry Law. Judgment for defendants, and the State appeals. Affirmed.

J. Q. Smith, Atty. Gen., and Horace Wilkinson, Asst. Atty. Gen., for the State.

Charles F. Douglass, of Anniston, for appellees.

PER CURIAM. This is a proceeding by the state to condemn a mule, a buggy, and harness, which were being used in the transportation of intoxicating liquors, in violation of a recent statute of this state passed at the present session of the Legislature, and referred to as the Bone Dry Prohibition Law of this state. This act, among other things, provides for the condemnation of "all conveyances and vehicles of transportation of any kind * * * used for the illegal conveying of any prohibited liquors or beverages."

The property in question was seized by the sheriff of Calhoun county while in the possession of one Arthur J. Hughes, and while it was being used to convey prohibited liquors in violation of the statute. As to these facts there seems to be no dispute, and no question is here raised as to the validity of the seizure.

After seizure of the property, the statute provides for condemnation proceedings. As a part of this procedure, it provides that "any party claiming a superior right may intervene by petition in said suit and have his claim adjudicated." After the adjudication by the court of the claimant's rights, and as to whether the property is subject to condemnation, the statute provides for a sale of the property, but only authorizes the sale of the right of those "who aided or as-

---

sisted in the illegal transportation, or who had knowledge or notice thereof, or who could by reasonable diligence have obtained knowledge or notice thereof."

The statute therefore clearly never contemplated condemning and selling the property of those who did not aid or assist in the illegal act, or who were not chargeable with notice or knowedge that their property was to be used for such illegal purpose. It seems to us too clear for argument that the Legislature did not intend that the property of a person wholly innocent of any intent to violate the law, or to aid or assist another in violating, and without knowledge or notice of facts to put him on notice that his property was to be used in violation of the statute, should be confiscated.

The language used in section 13 of the act is not susceptible of the construction contended for by the state in its argument. The contention of the state is thus stated in brief of counsel:

"The state contends in this case that a proper interpretation of section 13 of the act approved January 25, 1919, known as the Bone Dry Law, must result in a holding to the effect that any vehicle that is used for unlawfully transporting liquor is subject to forfeiture, if it was lawfully in the possession of the wrongdoer at the time the unlawful act was performed, and this without regard to knowledge or notice on the part of the true owner of the unlawful use to which it was put."

We cannot assent to the interpretation of the phrase "aided or assisted" which counsel for the state place on it. Counsel thus state their interpretation of this phrase:

"The words 'aided or assisted,' as used in the statute, merely imply a contribution to the general result, and a person may 'aid' in illegally transporting liquor by unconsciously, and therefore innocently, doing some act essential to its accomplishment."

It is perfectly plain that the lawmakers intended to forfeit and confiscate only the property interest and right of those who were culpable as to its use in violating the law. It is not necessary to the forfeiture that the owner be guilty of the crime or offense of unlawfully transporting the liquors; but it is necessary that he be culpable or derelict in the use of his property in allowing it to be used for an unlawful purpose. Why allow an owner to intervene and file his superior claim for the purpose of having it adjudicated, if the mere use of the property for the unlawful purpose by a wrongdoer, without the consent of the owner, ipso facto forfeits it?

The only condition which the state's construction places upon the provision in question is that the possession of the wrongdoer must be unlawful. According to this construction, if the wrongdoer obtains the possession of the property for a lawful purpose, and, without the knowledge or consent of the owner, uses it for an unlawful purpose, it is ipso facto forfeited as if it were the property of the wrongdoer. We do not so read or understand the statute. No such object or purpose is evinced by the reading of section 13 of the act alone, or in connection with the whole act. As before stated, while it is not necessary to a forfeiture of the property that the owner thereof be criminally guilty as to its use for the unlawful purpose, it is necessary that he either have actual knowledge or notice that it is to be or will be so used, or that by his fault he is chargeable with knowledge or notice that it is to be, or will probably be used for such purpose.

While there may be some difference of meaning between the words "aid" and "abet" and between the phrases "aid and abet" and "aid and assist," they have each been construed by this court in the sense, in which we now construe them. In the case of State v. Tally, 102 Ala. 25, 15 South. 722, they were so construed. Justice McClellan in that case said in defining the words "aid" and "abet":

"What is meant by these terms, and what has one to do to bring himself within them? It is said in Raiford's Case, supra, that 'the words "aid" and "abet" are pretty much the synonyms of each other,' and this has doubtless come to be true in the law, though originally a different meaning attached to each. The legal definition of 'aid' is not different from its meaning in common parlance. It means to assist, to supplement the efforts of another. Rap. & L. Law Dict. p. 43. 'Abet' is a French word compounded of the two words 'a' and 'beter,' to bait or excite an animal; and Rapalje and Lawrence thus define it: 'To abet is to incite or encourage a person to commit crime; an abettor is a person who, being present or in the neighborhood, incites another to commit a crime, and thus becomes a principal in the offense.' Rap. & L. Law Dict. p. 4. * * * So we have this definition of the two terms by the late Chief Justice Stone: 'The words "aid" and "abet," in legal phrase, are pretty much the synonyms of each other. They comprehend all assistance rendered by acts, or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.' Raiford v. State, 59 Ala. 106."

The words "aided and assisted," as used in this statute, imply either knowledge on the part of the person so aiding or assisting, or such negligence and want of care as to charge him with knowledge or notice that the property is to be used in violation of the law.

So construing the statute, neither Floyd

Hughes, the owner of the mule, nor Charlie Adams, the owner of the buggy and harness, aided or assisted the wrongdoer, Arthur H. Hughes, in the illegal transportation of the prohibited liquor. In their claim to the property seized they alleged, among other things:

"That your petitioner was not in any way connected with or interested in said whisky; that he had no knowledge whatever that the said mule was used in the transportation of whisky, and did not so much as know that his son was using the mule that afternoon until petitioner reached home that night.

"Your petitioner further represents that said buggy and harness are the property of petitioner; that the said J. A. Hughes does not now and has never owned any interest in same; that he did not authorize the said J. A. Hughes to use same on the occasion herein referred to; that he did not have any knowledge that the same was being used in the handling of whisky, and has never at any time authorized or consented for the said J. A. Hughes to use said buggy and harness or either in connection with whisky in any way."

The evidence supported these claims, and the trial judge so found, and held that the property was not subject to condemnation.

The trial judge correctly construed the statute when he said:

"Section 13, when read and construed as a whole, as it should be, does not authorize a decree of the court condemning a vehicle, conveyance, or other property employed in the unlawful transportation of prohibited liquors by a person to whom said vehicle, conveyance, or other property has been intrusted by the owner, unless the owner aided or assisted in such illegal transportation, or had knowledge or notice thereof, or could by reasonable diligence have obtained knowledge or notice thereof. It is not insisted that the buggy and harness were being used by the defendant by permission of the claimant, Adams, even for the lawful purpose."

There is no question raised on this appeal as to the constitutionality or validity of the statute as a whole or as any section or part thereof. The evidence being without dispute, the only question involved is the construction of section 13 of the act, and, so construing it as the trial judge construed it, it results that the judgment of the trial court must be affirmed.

Affirmed.

All the Justices concur.